# Pittsburg Valve, Foundry & Construction Company *v.* Klingelhofer, Appellant.

*Contract—Agreement not to engage in trade—Limited partnership association.*

Where the chairman of a limited partnership association engages in a number of conferences which had for their object the consolidation of several concerns, and as a result of the conferences an agreement is framed by which for a large consideration the business of the limited partnership is sold to the consolidated company and a covenant is inserted to the effect that "the said parties further agree that they will not, nor shall any member of said parties concerned engage in a similar business to that now carried on by said parties for the period of ten years," and this agreement is signed by the chairman for his own company, the chairman cannot in a suit brought to restrain him from engaging in similar business allege that he did not understand when he signed the agreement that it bound him individually.

*Contract—Equity—Understanding of party.*

A court of equity will not enforce an agreement against a child nor against one not compos mentis on the ground of mental incapacity; it may even under particular circumstances refuse to enforce what is called a hard bargain against a very ignorant man, or one much enfeebled mentally by age, on the ground of nonunderstanding. But a chancellor never requires affirmative proof that a grown man understood the meaning of a particular contract to accord with his own interpretation of it; he will conclusively presume that such a contracting party understood it in its natural, obvious meaning to the chancellor, in view of the subject of the contract and the surroundings of the parties at the making of it. Per DEAN, J.

Argued Nov. 2, 1904. Appeal, No. 198, Oct. T., 1904, by defendants, from decree of C. P. No. 2, Allegheny Co., Jan. T., 1904, No. 397, on bill in equity in case of Pittsburg Valve,

Foundry & Construction Company v. George E. Klingelhofer et al. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT and THOMPSON, JJ. Affirmed.

Bill in equity for an injunction. Before SHAFER, J.

The court found the facts to be as follows :

1. In March, 1900, negotiations were had between certain parties engaged in the foundry, machine, valve and pipe fitting business in the city of Pittsburg and vicinity, looking to a consolidation of their interests and the formation of a corporation, and agreements were made by them with one VanTine for the sale of their respective plants to VanTine for that purpose ; the agreements, which are all upon the same form of printed blank, containing this agreement : " Said vendors hereby further agree that they will not nor shall any member of said vendors concerned engage in a similar business to that now carried on by said vendors except as otherwise noted in said schedule ' A ' forming a part hereof . . . . for a period of ten years," etc. What exceptions were contained in schedule " A " do not appear from the evidence. The Pittsburg Valve & Machine Company, Limited, a joint-stock association of the city of Pittsburg, made one of these agreements, and the individual members of it, including all of the defendants, executed a contemporaneous agreement ratifying and confirming the contract made by the company with VanTine.

2. The negotiations above referred to were never carried into effect and were abandoned. Sometime in the summer of 1901, the parties who had been negotiating with VanTine or with each other through VanTine and one or more additional parties took up again the matter of forming a corporation to take over their respective properties, and held meetings at which a representative of each of the firms conducting the negotiations were present, the Pittsburg Valve & Machine Company, Limited, being always represented by the defendant George E. Klingelhofer, who was the secretary of the meetings, and he was authorized to act in the matter, and also for his brothers, the other two defendants. The result of these meetings was that it was agreed, the defendant George E. Klingelhofer concurring, that a company should be formed and the properties of the various parties taken over by the new

company according to the terms of the VanTine agreements. Counsel were employed to effect the consolidation and papers were drawn up to be signed by each of the component companies or partnership, which were in fact signed by them on or about October 3, 1900, that which was signed by the Pittsburg Valve & Machine Company, Limited, being set forth as exhibit " A " of the bill.

3. This agreement recites the desire to form a corporation on the part of the parties concerned, naming them, and that the parties by their five separate agreements, including the present contract, mutually agree to contribute to the corporation the leasehold and personal property owned by them respectively in payment of their shares. It then sets out that in consideration of $1.00, and of the other contracts executed by the parties, that the Pittsburg Valve & Machine Company, Limited, promises and agrees with the other parties, naming them, to contribute to the company $165,000 of the capital stock by conveying to it certain property set out in the agreement and that they will contribute to the expense of the organization of the company and join in its organization. The agreement then continues : " The said parties further agree that they will not, nor shall any member of said parties concerned, engage in a similar business to that now carried on by said parties except with the written consent of the said corporation for the period of ten years from the third day of October, 1900, within the United States of America east of the Mississippi river." This contract was signed as follows :

" THE PITTSBURG VALVE & MACHINE COMPANY, LTD.
      " PER G. E. KLINGELHOFER, Chairman.
            " A. GLAMSER, Secretary."

4. At or about the same time agreements in writing were drawn up by counsel to be signed by the individual members of each of the five companies or partnerships concerned which recited the above mentioned contract, and then containing a covenant on the part of each of the officers, directors, members and stockholders of the respective companies, that they would not individually or collectively, within ten years thereafter, engage in this business, and a statement that the covenants therein contained should inure to the benefit of the corpora-

tion when formed. A copy of this agreement or proposed agreement is printed as exhibit "B" of the bill.

5. All five of the agreements in the form of exhibit "A" of the bill were executed and delivered by the respective parties, and the members and stockholders of the other four companies and partnerships executed and delivered the agreement in the form shown by exhibit "B," but it was not signed, so far. as appears at least, by all of the members of the Pittsburg Valve & Machine Company, Limited, and whether signed or not it never came into the possession of the other parties to the agreement or of the corporation, and there is no evidence that it was signed by Charles T. Klingelhofer or W. L. Klingelhofer.

6. A charter was granted on October 29, 1900, under the corporation act of 1874 and its supplements, to the plaintiff company to engage in the general foundry, machine, valve and pipe fitting business in the city of Pittsburg, being the company the formation of which was contemplated and effected by the agreements above recited. The several companies above mentioned, including the Pittsburg Valve & Machine Company, turned over their property and assets to the new company so formed according to the agreement and received therefor for distribution, among other members or stockholders, stock for the amounts agreed upon, the stock to which the Valve & Machine Company was entitled being delivered to George E. Klingelhofer, who distributed it among the members of the limited company according to their interests, the full delivery of the stock and distribution among the members not being completed, however, until a considerable time after October, 1900.

7. Upon its incorporation the plaintiff company proceeded to conduct the business for which it was incorporated; and employed the defendant George E. Klingelhofer as its general manager, the defendant Charles T. Klingelhofer as foreman of the pattern department, and the defendant W. L. Klingelhofer as a salesman.

8. Sometime after the formation of the company and after it had entered upon the conduct of the business, George E. Klingelhofer was asked by one or more of the officers of the company with regard to the contract to be signed by the individual members of his former company in form of exhibit

" B," and he told them that he had it signed by all but one of the members of the company, but it does not appear ever to have been delivered to the company.

9. In the month of July, 1901, disputes arose between George E. Klingelhofer and the directors of the company with regard to the management of the business, and he resigned as general manager.

10. Sometime in the spring of 1902 a company, called the American Foundry & Construction Company, was organized to carry on the same business as that carried on by the plaintiff, and sometime after its organization George E. Klingelhofer was employed as its general manager, and Charles T. Klingelhofer as superintendent of some of its departments, and W. L. Klingelhofer as a salesman. The American Foundry & Construction Company is in competition with the plaintiff company at Pittsburg and throughout the country east of the Mississippi river.

11. There is no evidence that Charles T. Klingelhofer or W. L. Klingelhofer ever in fact knew the contents of the agreement, exhibit " A," or that George E. Klingelhofer had agreed or undertaken to agree for them that they would remain out of the business.

The court entered the following decree :

And now, to wit: October 3, 1904, this cause came on to be heard at this term, and was argued by counsel, and upon consideration thereof, it is ordered, adjudged and decreed as folows, to wit :

That an injunction issue under the seal of this court perpetually enjoining and restraining the said George E. Klingelhofer from engaging, either directly or indirectly, as principal, agent or employee of any person, partnership or corporation, or in any other manner, howsoever, in the general foundry, machine, valve and pipe fitting business, or any branch thereof, within the United States east of the Mississippi river, and particularly from engaging in said business for, or with or in the employment of the American Foundry & Construction Company, its successors or assigns, or continuing in its employment or assisting in its business for the period of ten years from October 3, 1900, without the consent of the plaintiff company, and that the defendant George E. Klingelhofer pay

the costs of these proceedings ; and that the bill be dismissed as against Charles T. Klingelhofer and W. L. Klingelhofer.

*Error assigned* was the decree of the court.

A. *Leo. Weil,* with him *Chas. M. Throp,* for appellant.—In a court of equity, unless it is perfectly clear that the minds of the parties have come together and been in accord upon all the material terms of the agreement, a chancellor ought to decline to interfere : Wistar's App., 80 Pa. 484 ; Kendall v. Almy, 2 Sumn. 278 ; Hennessey v. Woolworth, 128 U. S. 438 (9 Sup. Ct. Repr. 109) ; Dalzell v. Dueber Mfg. Co., 149 U. S. 315 (13 Sup. Ct. Repr. 886).

Even if there had been an agreement by appellant not to engage in business in competition with appellee, on the facts adduced in evidence in this case no injunction should have issued restraining appellant from accepting employment from the American Foundry & Construction Company : Harkinson's App., 78 Pa. 196.

The court erred in applying to the facts of this case the decision of this court in Pittsburg Stove and Range Company v. Pennsylvania Stove Company, 208 Pa. 37, and in assuming that in every case, it is a violation of a contract not to engage in business for the contracting party to accept employment.

W. *K. Shiras,* of *Shiras & Dickey,* for appellee.

OPINION BY MR. JUSTICE DEAN, December 31, 1904 :

Certain partnerships and companies engaged in the foundry, machine, valve and pipe fitting business at Pittsburg in the year 1900 entered into negotiations with a view to consolidating all their concerns into a single company. One VanTine was the active party in promoting this effort at consolidation. The different companies all signed this consolidation agreement on a separate blank, prepared for that purpose, in which each stipulated for the sale of its plant to the new company for an ample consideration, and that neither the firm nor company nor any member of it would engage in a similar business to that then carried on for a period of ten years. The Pittsburg Valve & Machine Co., Limited, made one of these agree-

ments with VanTine; these three defendants were partners in that company and all three formally ratified it. The Van-Tine consolidation was not carried out, but the next year, 1901, the matter was again taken up and the VanTine negotiations were adopted as the basis for a new company. Many meetings were held and at each one of them the defendants' company was represented by George E. Klingelhofer who acted as secretary and who was authorized to act for his brothers the other two defendants. It was finally agreed, that a new company should be formed thereafter to be incorporated; the old companies to be taken over by the new according to the terms of the VanTine agreement. There were five separate companies or partnerships which agreed to become members of the new one, among them the Pittsburg Valve & Machine Company, then carried on by defendants. Each company was to contribute its leasehold and other property in payment for their shares in the new. The Valve & Machine Co., Limited, transferred its property to the new company at the price of $165,000 to be paid in the new company's stock. On receiving the stock the Pittsburg Valve & Machine Company signed a written agreement in which is this stipulation : " The parties further agree that they will not nor shall any members of said parties concerned, engage in a similar business to that carried on by said parties except with the written consent of said corporation for the period of ten years from October 3, 1900, within the United States of America east of the Mississippi river." This agreement was signed by the Pittsburg Valve & Machine Company, per G. E. Klingelhofer, Chairman, A. Glamser, Secretary.

It was agreed orally about the same time that all these separate contracts should inure to the benefit of the new company; it was not shown that this contract was signed by Charles T. and W. L. Klingelhofer, the other two defendants. Upon its incorporation and commencement of business, George E. Klingelhofer was appointed its general manager and Charles T. foreman of the pattern department. In July, 1901 George E. had some difficulty with the officers of the company and resigned. Early in 1902, the American Foundry Construction Company was organized to carry on a business similar to that of the valve company and all three of the defendants were

employed in the several departments, George E. as foreman and general manager. This company became a competitor of the plaintiff company in the same business. The plaintiff then filed this bill against the three defendants to enjoin them and each of them from continuing in the employment of the competing company for ten years in the territory east of the Mississippi. The court below after a full hearing directed that an injunction issue against George E., but for the reason that the evidence failed to show that Charles T. and W. L. were bound by the company agreement signed by their brother, dismissed the bill as to them. Thereupon George E. brings this appeal.

The principal error complained of, at least the one most earnestly argued here, is the first, that: " There was no proof sufficient to enable a chancellor to frame and make the agreement not to engage in business on the part of the individuals which was the subject of the discussion of the parties so far as George E. Klingelhofer is concerned, there being no evidence of what he understood the agreement to be, its terms, exceptions, conditions or provisions."

It will be noticed that this point really turns on the capacity of George E. Klingelhofer's understanding. A court of equity will not enforce an agreement against a child nor against one not compos mentis on the ground of mental incapacity; it may even under particular circumstances refuse to enforce what is called a hard bargain against a very ignorant man, or one much enfeebled mentally by age, on this ground of non-understanding. But a chancellor never requires affirmative proof that a grown man understood the meaning of a particular contract to accord with his own interpretation of it; he will conclusively presume that such a contracting party understood it in its natural, obvious meaning to the chancellor, in view of the subject of the contract and the surroundings of the parties at the making of it. Here was the defendant, presumably an intelligent man, capable of supervising and managing a large manufacturing business; the subject of the contract was the very business in which he had long been engaged; his purpose was to sell it, if not at a very high price at a very full one; he and his fellows in the same business had been discussing their purpose at meetings both under the VanTine proposition and

the one which was consummated; this last one, signed by the Valve Company, per G. E. Klingelhofer, chairman, stipulates that neither George E., who affixed his signature, nor the firm, should engage in a similar business for ten years. These words in large part expressed exactly the proposed purpose of the consolidation. Neither the companies nor any member of the companies, were to engage in a similar business. As the evidence shows, this was the intention of all the members and a question which entered into their preliminary discussions. It is argued by appellant that the agreement signed by George Klingelhofer was understood by him to be executed by the company alone; that while agreements were perhaps to be made in the future and signed by the individuals composing the partnership, such agreements never were made and signed by the individual members of the Valve Company, therefore he never understood that as an individual he was bound not to engage in a similar business. The agreement which his company executed by him as chairman did not state that another agreement was to be executed in the future signed by the individuals of the partnership, in fact it says the very reverse; it says that: " The said parties further agree that they will not nor shall any members of said parties concerned engage in a similar business to that now carried on by said parties."

To what extent the company could bind the individual members of the partnership who did not sign this agreement or who had no knowledge of its terms we do not now decide, but surely on every principle of equitable estoppel this leading member of the partnership who framed the partnership agreement which professed partnership authority to bind the individuals of the partnership, and expressly undertook to bind himself and them as individuals cannot be heard to deny that the agreement bound him. He signed it, suggested its language and delivered it to the new company which on the strength of it paid the full consideration. If George E. did not then understand it bound him individually, it was his duty to speak out, or forever after hold his peace. Not having spoken when it was his duty to speak he will not be heard now when equity demands that he keep silent. Then after acting for his partnership he personally received the partnership share of the stock $162,600 and $22,000 cash. He now argues, that

he never understood the agreement which he signed for the company as binding upon him as an individual and therefore boldly disregards it. Even if the precedent agreement was unauthorized, nevertheless, the subsequent conduct of the company, as found in the sixth finding of fact, was a full ratification of it. The company and all its members with knowledge of the agreement are bound by it after accepting the consideration. There is nothing of such merit in the remaining assignments of error as calls for discussion; they are all overruled and the decree is affirmed.